UNITED STATES DISTRICT COURT
for the
WESTERN DISTRICT OF TEXAS, SAN ANTONIO DIVISION

| | |
|---|---|
| **In re the Application of:** § | |
| § | |
| **Sonda Jonathan Maduhu,** § | |
| Petitioner § | |
| § | **Civil Action No. 23cv142** |
| and § | |
| § | |
| **Heidi Andrea Maduhu,** § | |
| Respondent § | |

## VERIFIED PETITION FOR RETURN OF MINOR CHILDREN TO THEIR HABITUAL RESIDENCE (THE UNITED KINGDOM

### I.   PARTIES

1. This Verified Petition for Return of Minor Children to their Habitual Residence (The United Kingdom) is brought by Sonda Jonathan Maduhu ("Petitioner") pursuant to the Convention on the Civil Aspects of International Child Abduction[1] ("Convention") and 22 U.S.C. § 9003 (b), The International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. 9001 et. seq. (2001), the Convention's implementing statute for the United States. Petitioner, Sonda Jonathan Maduhu, has filed his Application **(Exhibit "A")** for the return of the minor children R.A.M. and M.H.M., through the Convention Central Authorities of the United Kingdom and the United States.

2. Respondent, Heidi Andrea Maduhu, is believed to be residing at the home of Heidi's mother, Sabrina C. Bishop-Smith and stepfather, Greg Smith at 1106 Tranquil Trail Dr, San Antonio, Texas, 78232 USA and working at the business of her brother, Carl Bishop, at AE Realty,

---

[1] Done at The Hague, October 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 22514

The Bishop Group, 16410 Blanco Rd. Ste.2, San Antonio, TX 78232, where service of process may be had. Respondent may be reasonably expected to receive personal notice of service of summons to any adult over the age of eighteen (18) at 1106 Tranquil Trail Dr, San Antonio, Texas, 78232 USA and/or at AE Realty, The Bishop Group, 16410 Blanco Rd. Ste.2, San Antonio, TX 78232.

3.  Petitioner and Respondent are the parents of R.A.M. and M.H.M., minor children, born August, 7, 2015 and May 16, 2018, respectively. Their certificates of birth are attached as **"Exhibit B"**.

## II.   JURISDICTION AND VENUE

4.  This Court has jurisdiction of this cause pursuant to 22 U.S.C. §9001 et. seq.; 28 U.S.C. 1367(a); and 28 U.S.C.1331 because this matter involves the wrongful international retention of minor children under the age of sixteen (16). Upon information and belief, the minor children. R.A.M. and M.H.M., the subjects of this action, are located within the jurisdiction of this Court.

5.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) because Respondent resides within the judicial district of this Court.

## III.   THE CONVENTION, GENERALLY

6.  The Convention went into effect in the UK on August 1, 1986, and went into effect in the USA on July 1, 1988, which is the effective date for the beginning of enforcement of the Convention between the two countries. The Convention was adopted in 1980 in response to the problem of international child abductions during domestic disputes. *Monasky v. Taglieri*, 140 S.

Ct. 719, 723 (2020), citing *Lozano v. Montoya Alvarez*, 572 U.S. 1, 4, 134, S.Ct. 1224, 188 L.Ed.2d 200 (2014) and *Abbott v. Abbott*, 130 S. Ct. 1983, 1990 (2010).

7. The objects of the Convention are "To secure the prompt return of children wrongfully retained or removed in any Contracting State; and to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States. (*Abbott*, Id.; Hague Convention Article 1(a) and (b))

8. The Convention's primary aims are to "restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court." *England v. England,* 234 F.3d 268 (5th Cir. 2000) citing Friedrich *v. Friedrich,* 78 F.3d 1060, 1063 (6th Cir. 1996). Requiring a return remedy in cases like this one helps deter child abductions and respects the Convention's purpose to prevent harms resulting from abductions. *Abbott, supra*.

**IV.    *PRIMA FACIE* CASE FOR RETURN OF MINOR CHILDREN TO UK**

9. Pursuant to the Convention, "The removal or the retention of a child is to be considered wrongful where:

a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

b) at the time of removal or retention those rights were actually exercised, either jointly or alone or would have been so exercised but for the removal or retention.

The rights of custody mentioned in sub-paragraph a) above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State." (Hague Convention Article 3).

10. In the Fifth Federal Circuit, a *prima facie* case for wrongful removal (or retention) pursuant to the Convention consists of three elements that must be established by a preponderance of the evidence. *Larbie v. Larbie*, 690 F. 3d. 295, 307 (5th Cir. 2012). "First, the petitioner must show that the respondent removed or retained the child somewhere other than the child's habitual residence." *Id*. Second, if petitioner is successful in proving the threshold element, then the "question becomes whether the removal or retention violated the petitioner's 'rights of custody' under the habitual-residence nation's laws." *Id.* (citations omitted). And third, if petitioner has rights of custody under the habitual-residence nation's laws, then petitioner need only make a final showing that "at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention." *Id.* (quoting Convention art. 3(b)).

11. <u>The United Kingdom is the habitual residence of R.A.M. and M.H.M.</u> While habitual residence is not defined in the Convention or ICARA, the United States Supreme Court has determined that a child's habitual residence depends on the totality of the circumstances specific to the case. *Monasky* at 723. Thus, Courts are free to look into the facts relevant to whether children are acclimatized to a residence as well as the shared intentions of the parents.

> "For older children capable of acclimating to their surroundings, courts have long recognized, facts indicating acclimatization will be highly relevant. Because children, especially those too young or otherwise unable to acclimate, depend on their parents as

caregivers, the intentions and circumstances of caregiving parents are relevant considerations." *Id* at 727.

Before being retained in Texas, R.A.M. and M.H.M. had spent their entire lives in The United Kingdom. The United Kingdom was their home and that in and of itself is sufficient to make it their habitual residence. "The place where a child is at home, at the time of removal or retention, ranks as the child's habitual residence." *Id* at 726,727, citing *Karkkainen v. Kovalchuk*, 445 F.3d 280, 291 (CA3 2006). The United Kingdom is the habitual residence of R.A.M. and M.H.M. within the meaning of Article Four of the Convention.

12. <u>As a parent, Petitioner has rights of custody</u> of R.A.M. AND M.H.M. in their habitual residence of the UK pursuant to the civil law of the UK, and therefore, the right to determine the place of their residence within the meaning of Articles Three, Five and Twenty-One of the Convention.

> *"In English law the Children Act 1989 defines parental responsibility as all the rights, duties, powers, responsibilities and authority which by law, a parent of a child has in relation to the child and their property. [Children Act of 1989, Sec 3, 1, https://www.legislation.gov.uk/ukpga/1989/41/section/3] This includes the right to determine the child's place of residence. If you have parental responsibility as defined in the Children Act 1989 you will have rights of custody for the 1980 Hague Convention."* Official Solicitor, The International Child Abduction and Contact Unit Guide, Page 7. https://assets.publishing.service.gov.uk/government/uploads/system/uploads/attachment_data/file/936583/international_child_abduction_and_contact_form_guidance.doc

13. <u>Petitioner was exercising his rights of custody at the time of the wrongful retention</u> of R.A.M. AND M.H.M. from The United Kingdom. *See,* Application, **Exhibit A, Sec. 6.a**.

14. <u>The children's visit to the USA was temporary</u>. As set forth in Sonda's application, he and Heidi agreed that she and the children would travel to Texas in December, 2021, for a visit over

Christmas with Heidi's family and to give Heidi the opportunity to have a pre-existing medical condition evaluated by experts in Texas. The intention of Sonda and Heidi was for the children to return to the UK after the Christmas holiday in time for R.A.M. to resume his schooling in the UK on January 6, 2022. Heidi requested some additional time and Sonda confirmed with the UK School Headmaster that R.A.M. could return to his school no later than February 25, 2022. The tickets for Heidi and the children to return to the UK were purchased on February 1, 2022, and were for a flight that would depart San Antonio, Texas on February 22, 2022, and arrive in London, England on February 23, 2022.

15.     <u>The retention of the children in Texas is wrongful</u>. On February 23, 2022, Heidi wrote the School Headmaster that she and the children were not on the return flight from the USA to the UK "as planned" and that she had no current plans to return to the UK**.** Over the next several months, Sonda made every effort to convince Heidi to return the children to the UK, including making a trip to Texas to meet with her and visit the children in September and October 2022 – all to no avail. Sonda then reluctantly prepared his application to return the children to the UK. At no time has there ever been any shared intention of Sonda and Heidi to establish Texas as a new habitual residence of R.A.M. and M.H.M. - and the children are of insufficient age to have become acclimated to Texas the past eleven months. The retention of R.A.M. and M.H.M. by Respondent in the United States is wrongful pursuant to Article 3 of the Convention because it is in breach of Petitioner's rights of custody, including the right to determine the residence of R.A.M. and M.H.M.

**V.     NO EXCEPTIONS TO RETURNING CHILDREN TO THE UNITED KINGDOM**

16. The Petitioner did not consent to, nor did he subsequently acquiesce in, the retention of R.A.M. and M.H.M. outside of The United Kingdom.

17. This Court ordering the immediate return of R.A.M. and M.H.M. to their habitual residence in The United Kingdom will not expose them to a grave risk of physical or psychological harm nor otherwise place him in an intolerable position pursuant to Article 13(b) - nor would their return be prohibited under the fundamental principles of the USA relating to the protection of human rights and fundamental freedoms pursuant to Article 20 of the Convention. Further, there are no facts supporting any other exception to the return of R.A.M. and M.H.M. to the United Kingdom.

## VI.    EXPEDITIOUS PROCEDURES

18. The primary objective of the Convention is "to secure the *prompt return* of children wrongfully removed to or retained in any Contracting State; and to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." (Convention Article 1) (Emphasis Added). The Convention Article 2 provides that the Contracting States "…shall use *the most expeditious procedures available*." (Emphasis added). The Convention Article 11 provides that "The judicial or administrative authorities of Contracting States *shall act expeditiously in proceedings for the return of children*." (Emphasis added). ICARA expressly provides that "Children who are wrongfully removed or retained within the meaning of the Convention are to be *promptly returned*…" 22 U.S.C. § 9001 (a) (4*)* (Emphasis added). Courts hearing Convention cases *should proceed and rule on such cases expeditiously. Abbott, supra.* (Emphasis added). "*… the Convention instructs contracting states to "use the most expeditious procedures available" to return the child to her habitual residence.*

*Art. 2, Treaty Doc., at 7. See also Art. 11, id., at 9 (prescribing six weeks as normal time for return-order decisions).*" *Malasky* at 724. (Empasis added).

19. This proceeding was commenced less than one year from the date of wrongful retention of R.A.M. and M.H.M. and pursuant to Article 12 of the Convention, their return *forthwith* to The United Kingdom must be ordered by the Court.

### VII.   PROVISIONAL REMEDIES

20. This Court, in furtherance of the objective the Convention may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent further removal or concealment before the final disposition.  22 U.S.C. § 9004.

21. Respondent wrongfully retains R.A.M. and M.H.M. in the United States of America. Petitioner seeks an *Ex Parte* Temporary Restraining Order *Ne Exeat* which is to be served upon the Respondent with the other initiating process and documents.  Petitioner requests that the Court order the surrender of the child's passport or other travel documents, if any, at the time of service. Petitioner also requests that the hearing on the TRO be consolidated with the hearing on the preliminary injunction motion and with a hearing on the merits of the Verified Petition to Return, pursuant to Rule 65(a) (2) of the Federal Rules of Civil Procedure.  In the alternative, Petitioner requests that the Court order an expedited hearing on the merits of the Verified Petition to Return.

22. The procedural vehicle for a temporary restraining order without notice is Federal Rule of Civil Procedure 65(b). Texas state law allows identical orders to this *ne exeat* order, pursuant to Texas Family Code § 105.001 and allows the application and issuance to be made *ex parte.*  The legal effect of the two orders is identical, to preserve the residence and location of the child so a

court may effectively adjudicate a pending action. Therefore, this application follows 22 U.S.C. § 9004 and is in accord with state law in its substance and procedure. The Order *Ne exeat* affords precisely the same due process rights of immediate redress to the court. A copy of Texas Family Code § 105.001 is attached as **Exhibit "C"** for the court's reference.

23. In *Klam v Klam*, 797 F Supp 202, 206 (EDNY 1992), interpreting 22 USC section 9004(a), reference is made to due process under state child custody jurisdictional procedural law.  In Texas, the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Texas Family Code § 152.311, provides for the same relief in that it authorizes a warrant to take physical custody of a child if under subsection (a)" ... if the child is immediately likely ... [to] be removed from this state". The warrant may be obtained *ex parte*. The temporary restraining order *ne exeat* requested by Petitioner and requiring maintenance of the children's present location and prohibiting their removal from the state, is in accord with the remedies available to the court under the authority of 22 USC § 9004.

24. Petitioner requests an order restraining any removal of the minor children R.A.M. AND M.H.M. from the state of Texas and their present location until the case can be brought before the court.  This order is not a custody determination in that it does not establish, change or modify legal or physical custody, or any custody or access rights.

25. The Federal Rules of Civil Procedure require the posting of security by plaintiff "in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." FRCP 65(c). Petitioner is of modest economic means and requests the Court grant him a waiver to the posting

of security because he has, by this pleading, established a *prima facie* case for return of the children to The United Kingdom pursuant to the Convention. There is little or no likelihood that the Respondent will suffer any costs or damages during the pending expedited proceedings in which they may exercise their right to immediate redress at the hearing to be set by this Court. Further, this order will not cause the removal of the minor children from Respondent during the pendency of the hearing, although the *Klam* case, and other cases authorize their removal.

26. Pursuant to the Convention Art. 21, this Court should provide an order for interim, access and visitation in person, and unfettered telephone and other social media access of the Petitioner with R.A.M. and M.H.M. pending the final outcome herein.

27. It is requested that the Court order Respondent and any other person having current control and custody over R.A.M. and M.H.M. to personally appear in Court. *Zajackenska v. Zajackenska*, 932 F. Supp. 128, 132 (the Court must treat the Convention petition as an application for a Writ of Habeas Corpus…pursuant to 28 U.S.C.A. 2243). However, Petitioner respectfully asks that the Children not be required to appear in Court.

28. The issue of custody must be addressed under UK Law.

29. Pursuant to Art. 14 of the Convention, this Court may take notice directly of UK law without recourse to the specific procedure for proof of that law. See also Art. 15; Fed. R. Civ. P. 44.1.

30. An Affidavit Pursuant to F.R.C.P. 65(b) (2) is attached as **Exhibit "D"**.

## VIII.   NOTICE OF HEARING

31.     Pursuant to 22 U.S.C. § 9003(e), the Petitioner requests that Respondent be given notice of any hearing in accordance with the Texas Uniform Child Custody Jurisdiction and Enforcement Act. Texas Family Code § 152.309.

## IX.     ATTORNEYS' FEES AND COSTS

32.     Petitioner has incurred and will continue to incur substantial expenses as a result of the wrongful retention of the children. Petitioner will submit a copy of all expenditures and will amend those costs according to proof and in light of further expenditures. Petitioner respectfully requests that this Court award all legal costs and fees incurred to date as required by 22 U.S.C. 9007, reserving jurisdiction over further expenses.

## X.     RELIEF SOUGHT

33.     WHEREFORE, Petitioner respectfully requests the following relief:

   a.     An Order directing the prompt return of R.A.M. and M.H.M. to the UK;

   b.     An Order directing the Respondent to arrange for and permit Petitioner immediate, regular and unfettered physical, telephonic and other social media access to R.A.M. and M.H.M. pending the resolution of this matter;

   c.     A Temporary Restraining Order setting an expedited hearing on the Petition for Return and Access, and ordering the Respondent to appear personally in this Court;

   d.     A *ne exeat* order, prohibiting the removal of the minor children R.A.M. and M.H.M. from the jurisdictional limits of this Court;

e. Consolidation of the hearing on the Temporary Restraining Order with any hearing on a Preliminary Injunction and with the hearing on the merits of the Petition for Return and immediate access to the minor children;

f. Attorney's fees and costs.

g. General Relief.

Respectfully submitted,

/s/ *Gary Caswell*

GARY CASWELL
Texas State Bar No. 03997500
caswell.gary@gmail.com
110 Broadway, Suite 510
San Antonio, Texas 78205 USA
Office: +210-202-2312
Mobile: +210-414-1645
Fax: +210-941-0880
ATTORNEY FOR PETITIONER

## VERIFICATION

I am the attorney for the Petitioner, Sonda Jonathan Maduhu. I am making this verification on behalf of Respondent, Sonda Jonathan Maduhu, who is out of the United States and living in the UK. The allegations in the above complaint are true based on my review of records provided by the UK Office of the Solicitor, International Child Abduction & Contact Unit and the United States Department of State, Office of Children's Issues, records provided by my client, and interviews I have had with the client. I make this statement under penalties of perjury.

/s/ *Gary Caswell*

GARY CASWELL