IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SONDA JONATHAN MADUHU, *Plaintiff* | § § § § | |
| -vs- | § § | SA-23-CV-00142-XR |
| HEIDI ANDREA MADUHU, *Defendant* | § § § § | |

## ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER

On this date, the Court considered Plaintiff Sonda Jonathan Maduhu's application for an ex parte motion for entry of a temporary restraining order and scheduling of an expedited hearing (ECF No. 3). For the reasons discussed below, the motion is **GRANTED**.

### BACKGROUND

This case arises under the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention" or "Convention"), Oct. 24, 1980, T.I.A.S. No. 11670, S. Treaty Doc. No. 99-11, and its implementing legislation, the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 *et seq*. The Hague Conference on Private International Law adopted the Convention in 1980 to address the problem of international child abductions during domestic disputes, such as the one at issue in this case.

Petitioner Sonda Jonathan Maduhu initiated this action to secure the return of his minor children, R.A.M. and M.H.M., who were allegedly removed from the United Kingdom without Petitioner's consent or acquiescence by the children's mother, Respondent Heidi Andrea Maduhu. ECF No. 1 (Verified Petition for Return of Minor Children to Their Habitual Residence, hereinafter "Original Petition"); ECF No. 2 (First Amended Verified Petition for the Return of Minor Children to Their Habitual Residence, hereinafter "Amended Petition").

R.A.M. and M.H.M. were born on August, 7, 2015 and May 16, 2018, respectively in the United Kingdom, where they lived with their parents until their removal to the United States. ECF No. 1 ¶ 11; ECF No. 1-2 (birth certificates).

Petitioner alleges that he and Respondent agreed that the children would travel with Respondent to Texas in December 2021, for a visit over Christmas with her family and to give Respondent the opportunity to have a pre-existing medical condition evaluated by experts in Texas. ECF No. 1 ¶ 14. According to Petitioner, the parties intended for the children to return to the United Kingdom after the Christmas holiday in time for R.A.M. to resume his schooling on January 6, 2022. *Id.* Respondent requested some additional time, and Petitioner confirmed with the school headmaster that R.A.M. could return to his school no later than February 25, 2022. *Id.* The tickets for Respondent and the children to return to the United Kingdom were purchased on February 1, 2022. *Id.* They were expected to board a flight that would depart San Antonio, Texas on February 22, 2022, and arrive in London, England on February 23, 2022. *Id.*

On February 23, 2022, however, Respondent wrote to R.A.M.'s headmaster to inform him that she and the children had not boarded the flight to London and had no plans to return to the United Kingdom. *Id.* ¶ 15. Over the next few months, Petitioner asserts that he made "every effort to convince Heidi to return the children to the UK, including making a trip to Texas to meet with her and visit the children in September and October 2022—all to no avail." *Id.* He then began the process of preparing his application under the Hague Convention.

Respondent is believed to be residing at the home of her mother, Sabrina C. Bishop-Smith, and stepfather, Greg Smith, located at 1106 Tranquil Trail Dr, San Antonio, Texas. ECF No. 1 ¶ 2. She is believed to be working at the business of her brother, Carl Bishop, AE Realty, The Bishop Group, 16410 Blanco Rd. Ste. 2, San Antonio, Texas. *Id.*

Petitioner's Original Petition and Amended Petition were filed on February 3, 2023. ECF Nos. 1, 2. Thereafter, this action was assigned to the undersigned. Petitioner now seeks (1) an *ex parte* temporary restraining order prohibiting the removal of the children from the geographic jurisdiction of the Court, pending further order from this Court, (2) an order setting a hearing on Plaintiff's request for a preliminary injunction, and (3) pursuant to Federal Rule of Civil Procedure 65, an order that the trial of the action on the merits be advanced and consolidated with the hearing on the Petition for the Return of the Children to Petitioner. ECF No. 3.

## DISCUSSION

**I.      Legal Standard for Issuance of a Temporary Restraining Order ("TRO")**

Under well-settled Fifth Circuit precedent, a preliminary injunction is an extraordinary remedy that should not be granted unless the movant demonstrates by a clear showing: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not undermine the public interest. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997). To determine the likelihood of success on the merits, the Court looks to the standards provided by the substantive law. *See Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 622 (5th Cir. 1985).

*Ex parte* restraining orders should be limited to preserving the status quo only as long as necessary to hold a preliminary injunction hearing. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974). A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or

damage will result to the movant before the adverse party can be heard in opposition; and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Procedurally, when a party also requests a preliminary injunction, Federal Rule of Civil Procedure 65(a) allows the Court to consolidate a hearing on a motion for a preliminary injunction with a trial on the merits of the complaint. Rule 65(c) allows the Court to "issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Included in the Court's discretion when setting a security bond is the ability to "require no security at all." *A.T.N. Indus., Inc. v. Gross*, 632 F. App'x 185, 192 (5th Cir. 2015) (quoting *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996)).

## II.   The Hague Convention and ICARA

The Hague Convention seeks "to secure the prompt return of children wrongfully removed to or retained in any Contracting State," and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." ECF No. 3-1, Treaty Doc., Art. 1. It accomplishes these objectives through the return remedy. *Sanchez v. R.G.L.*, 761 F.3d 495, 503 (5th Cir. 2014) (citing *Abbott v. Abbott*, 130 S. Ct. 1983 (2010)). The Convention is based on the principle that the best interests of the child are well served when decisions regarding custody rights are made in the country of habitual residence. *Id.* at 1995. Ordering a return remedy does not alter the exiting allocation of custody rights, but does allow the courts of the home country to decide what is in the child's best interests. *Id.* As the Supreme Court explained in *Abbott*:

4

> The Convention's central operating feature is the return remedy. When a child under the age of 16 has been wrongfully removed or retained, the country to which the child has been brought must "order the return of the child forthwith," unless certain exceptions apply. A removal is "wrongful" where the child was removed in violation of "rights of custody." The Convention defines "rights of custody" to "include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." A return remedy does not alter the pre-abduction allocation of custody rights but leaves custodial decisions to the courts of the country of habitual residence.

*Id.* at 1989 (citations omitted). "By focusing on the child's return, the Convention seeks to 'restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court.'" *Sanchez*, 761 F.3d at 503 (citing *England v. England*, 234 F.3d 268, 271 (5th Cir. 2000)). The return remedy determines the country in which the custody decision is to be made; it does not make that decision. *Id.*

ICARA implements the Hague Convention by authorizing a person who seeks a child's return to file a petition in state or federal court and directing courts to "decide the case in accordance with the Convention." 22 U.S.C. § 9003(a), (b), (d). Suit should be filed in a court in the jurisdiction where the child is physically located. *Id.* (b). If the child in question has been "wrongfully removed or retained within the meaning of the Convention," ICARA provides that the child shall be "promptly returned," unless one of a number of narrow exceptions is applies. *Id.* § 9001.

### III. Analysis

#### A. Substantial Likelihood of Success on the Merits

The Court must find that the Petitioner will likely succeed on the merits of his Original Petition before granting the requested temporary restraining order and other relief.

If a petitioner demonstrates that a child was wrongfully removed under the Hague Convention, the court must order the child's return to the country of habitual residence. 22

U.S.C.S. § 9001. Article 3 of the Convention provides that removal is "wrongful" if it "is in breach of rights of custody attributed to a person. . . under the law of the State in which the child was habitually resident immediately before the removal."

The Hague Convention does not define the term "habitual residence." *Larbie v. Larbie*, 690 F.3d 295, 310 (5th Cir. 2012). "The inquiry into a child's habitual residence is not formulaic; rather it is a fact-intensive determination that necessarily varies with the circumstances of each case." *Id.* (quoting *Whiting v. Krassner*, 391 F.3d 540, 546 (3d Cir. 2004)). The Supreme Court held in *Monasky v. Taglieri* that "a child's habitual residence depends on the totality of the circumstances specific to the case." 140 S. Ct. 719, 723 (2020). "Because children, especially those too young or otherwise unable to acclimate, depend on their parents as caregivers, the intentions and circumstances of caregiving parents are relevant considerations. No single fact, however, is dispositive across all cases." *Id.* at 727.

As set out in the Petition, the children were born in the United Kingdom and lived there prior to their removal. ECF No. 1 ¶ 11; ECF No. 1-2 (birth certificates). Thus, the Court finds that Petitioner has satisfactorily established—for the purpose of obtaining a TRO—that R.A.M. and M.H.M.'s habitual residence is the United Kingdom. Because R.A.M. and M.H.M. are young—less than eight years old—their parents' intentions are significant. The parties did not exhibit a shared intent that R.A.M. and M.H.M. permanently relocate to the United States.

Because the Court has found that R.A.M. and M.H.M. habitually resided in the United Kingdom immediately before removal, the rights of custody will be determined by the application of the laws of the United Kingdom. *See Bernal v. Gonzalez*, 923 F. Supp. 2d 907, 918 (W.D. Tex. 2012). Here, Petitioner has rights of custody by operation of English law, and

specifically the United Kingdom Children Act of 1989 (the "Act"),7[1] which provides that "[w]here a child's father and mother were married to each other at the time of his birth, they shall each have parental responsibility for the child." Children Act § 2(1). "Parental responsibility" as defined by the Act includes the right to determine the child's place of residence and "rights of custody" as defined by the Hague Convention. "American courts have interpreted Section 2 of the Children Act as sufficient proof of *de jure* rights of custody for a Hague Convention *prima facie* showing of wrongful retention or removal, at least where no English court order negating the petitioner's parental responsibility is in effect." *Haimdas v. Haimdas*, 720 F. Supp. 2d 183, 202 (E.D.N.Y. 2010). Petitioner therefore has rights of custody under the Hague Convention.

Therefore, the Court finds that—for the purpose of obtaining a TRO—Petitioner was exercising custodial rights to R.A.M. and M.H.M., in their habitual residence in the United Kingdom, within the ambit of the Hague Convention. Petitioner has sufficiently demonstrated a likelihood of success on the merits to obtain a TRO.

B.     **Threat of Irreparable Injury**

Petitioner argues that there is a substantial threat of irreparable injury if a TRO is not entered because "Respondent could further relocate the children." ECF No. 3 at 3. Petitioner alleges that Respondent has permitted him no meaningful access to his children since late February 2022. ECF No. 2-1 (Attorney Certification). The Court agrees with Petitioner that these actions would constitute irreparable damage and are exactly the kind of circumstances warranting injunctive relief under the law. *See Rodriguez v. Escamilla*, No. DR-13-CV-077-AM, 2013 WL 12109029, at *2–3 (W.D. Tex. Oct. 25, 2013) (finding the prospect that a respondent

---

[1] The Court may take judicial notice "of the law of, and of judicial or administrative decisions, formally recognized or not in the State of the Habitual Residence of the child." Hague Convention, art. 14.

could once again relocate a minor child without consent as sufficient to support the irreparable injury element of as a temporary restraining order in a Hague Convention case).

### C. Balance of the Equities

Because Petitioner's requested relief simply maintains the current status quo by ordering that R.A.M. and M.H.M. remain with the Respondent in the geographic jurisdiction of this Court, it does not impose any injury on Respondent. *See Rodriguez*, 2013 WL 12109029, at *2 (finding that the balance of equities favored a temporary restraining order to preserve the status quo under similar circumstances). Accordingly, the Court concludes that Petitioner has established that the threatened injury—not being able to locate his children in the future—outweighs any harm that may result from the injunction to Respondent.

### D. Public Interest

The relief that Petitioner seeks is explicitly authorized by the Convention, an international treaty ratified between the United Kingdom, the United States, and the other contracting states. *Saldivar v. Rodela*, 879 F. Supp. 2d 610, 616 n.5 (W.D. Tex. 2012). It is also explicitly contemplated by federal law, which states that a court "may take or cause to be taken measures under Federal or State law, as appropriate . . . to prevent the child's further removal or concealment before the final disposition of the petition." 22 U.S.C. § 9004. Because enforcing the Hague Convention is consonant with international and federal law, the Court agrees with Petitioner that issuing a TRO would not injure the public interest. *Rodriguez*, 2013 WL 12109029, at *2 (W.D. Tex. Oct. 25, 2013).

## CONCLUSION

This *ex parte* order is granted without notice to Respondent Heidi Andrea Maduhu because the Court has determined that there is a significant risk that she will leave the

jurisdiction of this Court prior to the issuance of an order for injunctive relief if she is given notice.

For the foregoing reasons, the Court **ORDERS** the following:

1. Respondent, her agents, and all persons acting in concert with her, will be restrained from removing the children R.A.M. and M.H.M. from the geographic jurisdiction of this Court pending further order of this Court or another United States court or agency.

2. A hearing on Plaintiff's Request for Preliminary Injunction is set for **Thursday, February 23, 2023**, at **9:00 a.m.** in Courtroom H, United States Courthouse, 262 West Nueva, San Antonio, Texas 78207. At the hearing, Respondent must personally appear with R.A.M. and M.H.M., and show cause why this temporary restraining order should not be extended, as well as why R.A.M. and M.H.M. should not be returned to the United Kingdom. The Court will consolidate a trial of the case on the merits with the hearing of application for preliminary injunction. *See* FED. R. CIV. P. 65(a); *John v. State of La. (Bd. of Trs. for State Colls. & Univs.)*, 757 F.2d 698, 704 (5th Cir. 1985).

3. Petitioner shall serve a copy of this Order and his Original Petition and Amended Petition (ECF Nos. 1, 2) on Respondent no later than **February 17, 2023**.

4. Unless extended by the Court, this Order expires on **Friday, February 24, 2023**, at **5:00 p.m.**

5. No security bond is required.

It is so **ORDERED**.

**SIGNED** this 10th day of February, 2023.

                XAVIER RODRIGUEZ
                UNITED STATES DISTRICT JUDGE